Dickinson Fuel Company v. Commissioner.
Dickinson Fuel Co. v. Commissioner
Docket No. 6753.
United States Tax Court
1946 Tax Ct. Memo LEXIS 155; 5 T.C.M. (CCH) 513; T.C.M. (RIA) 46146; June 25, 1946
*155 Charles W. Moxley, Esq., Kanawha Valley Bldg., Capitol and Lee Sts., Charleston, W. Va., for the petitioner. E. L. Corbin, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: This case involves income tax for the calendar year 1942. Deficiency was determined in the amount of $5,124.33. Of that amount $828.93 is not contested leaving the amount in controversy $1,295.40. The sole issue presented is whether the petitioner is entitled to deduction of $10,000 because of alleged partial worthlessness of a debt due from Colonial Fuel Co. and charged off in the taxable year. From evidence adduced and admissions in pleadings, we make the following Findings of Fact The petitioner, Dickinson Fuel Company, hereinafter sometimes referred to as Dickinson Co., is a corporation incorporated in 1917 under West Virginia law, with its principal place of business at Charleston, West Virginia. It has for at least 16 years made its income tax returns on an accrual basis. For 1942 petitioner reported in its Federal income tax return total income of $81,296.47, and total deductions of $63,105.77, including $11,546.49 for bad debt, leaving net income *156 of $18,190.70. Its business is described as "coal sales agency" on its capital stock tax return for year ending June 30, 1942. Balance sheets as of December 31, 1941, and December 31, 1942, attached to the income tax return, show "inventories" as blank. Its corporation income and declared value excess profits tax return for the calendar year 1942 was filed with the collector for the district of West Virginia. It was organized by John L. Dickinson, A. H. Land and Charles C. Dickinson, each owning one-third of the stock. Charles C. Dickinson in the taxable year was and had for about 20 years been president and general manager and owned all of the stock. The petitioner acts as sales agent for various mines, selling coal for them on a commission basis. The petitioner has for about 20 years owned all of the stock of Colonial Fuel Co., (hereinafter sometimes called Colonial) which was organized about 1926, by the petitioner, under the law of Ohio, and the place of business which is at Columbus, Ohio. It is one of petitioner's customers, and buys coal through the petitioner. The books of both companies have since 1930 been kept at Charleston, West Virginia, by or under the supervision of *157 the same accountant, who is auditor and secretary of both companies. Charles C. Dickinson is and has for about 20 years been president of Colonial Fuel Co. He is active executive officer in charge of both petitioner and Colonial. On December 31, 1942, petitioner carried on its books five notes issued by Colonial to petitioner, in dates and amounts as follows: For $24,366.77 dated July 31, 1926, payable on demand. For $4,676.10 dated September 17, 1926, payable on demand. For $10,432.07 dated November 1, 1929, payable 30 days (reduced by payments to $5,200). *
For $1,468.85 dated April 30, 1932, payable on demand. For $20,000.00 dated July 30, 1941, payable on demand. Petitioner, on December 31, 1942, also carried on its accounts receivable ledger an open account against Colonial in the amount of $18,300.75. The five notes and open account totaled $74,012.47. The balance sheet of Colonial at December 31, 1942, showed assets of $33,977.42, after excluding $1,956.40 *158 reserve for depreciation and including reserve of $5,382.34 for bad debts, and $28,595.08 without such reserve for bad debts. Good will is not shown on the balance sheet. It has value, a maximum value being $5,000. The assets shown included $20,187.03 accounts receivable. This was for coal. Colonial had no property not shown on the balance sheet. The notes and open account were not secured, by endorsement or otherwise. Among the liabilities appear $18,282.09 accounts payable to Dickinson Fuel Co. and notes payable of $55,711.72. Colonial had losses in operation as follows: 1937,
loss $4,730.64
1938,
loss $5,253.16
1939,
loss $5,454.65
1940,
loss $3,940.98
1941,
loss $5,034.00
1942,
loss $3,126.37
In 1935 petitioner charged off $4,676.10 of indebtedness from Colonial as partially worthless, and the deduction was allowed by the Commissioner. During 1937 petitioner charged off as partially worthless the amount of $5,200, and the deduction was disallowed by the Commissioner, as of December 31, 1942, but in 1943, before filing its return for 1942, petitioner charged off $10,000 of the Colonial indebtedness, because of partial worthlessness. Had petitioner *159 enforced payment from Colonial to the fullest possible extent on December 31, 1942, Colonial would have had to close and liquidate its business. About 1926 a man named Plant was indebted to petitioner for about $35,000 or $40,000. One of his assets was Colonial Yard. The petitioner took over Colonial Yard at an agreed value based on inventory. Colonial was organized by petitioner to take over Colonial Yard, petitioner taking all the stock. The capital stock issue was in the amount of $25,000. The accounts receivable in Colonial's balance sheet were for goods sold to its customers, and not to petitioner. The notes to petitioner from Colonial were for coal sold by petitioner to Colonial, which was first charged to accounts, and notes later issued for the accounts. Petitioner and Colonial are both still in operation, petitioner still selling coal to and extending credit to Colonial. The latter has been making some profit in later years, having $1,674.75 net profit in 1943, $4,764.67 in 1944 and $6,948 in 1945. During those three years Colonial paid nothing to petitioner, the profit being left to accumulate in bank. Colonial, in each of one or two years, not specified in the evidence, *160 but prior to 1941, made profit of about $1,000-$1,200. The note from Colonial to petitioner for $24,366.77 and dated July 31, 1926, was given for the assets which petitioner had taken over from the Colonial Yard. When business was started by Colonial it gave petitioner its note for those assets. The note for $10,432.07 dated November 1, 1929, was for coal sold to Colonial and put in storage. A note was taken to take care of the storage account to see whether Colonial could pay its bills from that time on if petitioner absorbed the inventory account. Petitioner was trying to see whether it could make Colonial make some money. The note for $1,468.65 dated April 30, 1932, was for the same purpose. Petitioner was again trying to put Colonial on its feet. Petitioner never brought suit against Colonial on the notes or account. The petitioner was sales agent for various mines on a commission of from 5 to 8 per cent. In consideration of such commissions it guaranteed the accounts of Colonial with such mines. It dealt with Colonial on the same price basis as with other customers. The accounts with Colonial represented the price of the coal sold as sales agent, the sales being taken into *161 account as sales of merchandise, notes being usually taken later to cover the open accounts for coal. Opinion Did the respondent, under the above facts, err in denying the petitioner deduction of $10,000 because of partial worthlessness of debt? The burden is upon petitioner to show such error, by showing the essential facts showing right to the deduction. . On the record we conclude such burden has not been met. The record is not sufficiently clear to demonstrate that petitioner is entitled to the deduction. The two companies, petitioner and Colonial, were under the same management, both as to operation and bookkeeping; the petitioner always owning all stock of Colonial. Though the accounts, later in general converted into notes, were set up for sale of merchandise, it appears that petitioner was sales agent in selling the coal for various mines to Colonial, for a commission, which Colonial did not bear, and guaranteeing payment by Colonial. This indicates that Colonial was in fact the purchaser from the mines, the petitioner mere agent guaranteeing payment. Petitioner's business was "coal sales agency" and at least on December 31st *162 of 1941 and 1942, it carried no inventories, indicating that it considered itself only agent for the coal handled. As mere guarantor it is, in the absence of loss from such guaranty, not in a position to be entitled to deduction, and setting the accounts up in notes does not change the essential situation. Effort was never made to collect from Colonial on earlier notes given for the same class of indemnification. Margaret M. Acheson v. Commissioner, Fed. (2d) (May 15, 1946). Whether or to what extent the petitioner had, by December 31, 1942, paid the mines for such coal upon its guarantees, does not appear. Nor is it at all clear as to what the original note of $24,366.77, executed July 31, 1926, at about the time petitioner incorporated Colonial taking its stock of $25,000, represented. The petitioner had had an account against one Plant, owner of a "Colonial Yard" and appears to have taken over Colonial Yard, seemingly having the same assets as Colonial, to apply on his debt, and apparently stock was issued and the note given, all with some relation to the assets, though Charles C. Dickinson, president of both companies, could not be sure what the $24,366.77 note was for. Nothing *163 indicates that cash was paid in by petitioner for the stock. Thus it can not be said that showing has been made that the original and largest of the notes involved did not represent a capital contribution by petitioner to Colonial. If it was mere capital investment the deduction now claimed would not be well based thereon. . Nor is it clear that the note given on July 30, 1941, had any value when executed. Colonial had been losing money for several years at that time and petitioner had been taking notes to "absorb" inventory and "to see if they [Colonial] could stand on their own feet or not." The last payment on the $10,432.07 note was made May 31, 1935. Entry thereon of that and the other credits was not made until May 15, 1946. All this tends to indicate that little value if any was ascribed by petitioner to the earlier notes here involved, and strongly affects the present contention as to the later notes and account that partial worthlessness occurred and was charged off in 1942. Value of the notes at issuance not appearing, deduction of later charge-off for partial worthlessness can not be sustained. . *164 The petitioner was "more lenient with the Colonial Fuel than we are with others." It appears throughout the years to have been trying to see whether Colonial could stand on its own feet and pay its bills. No proceedings were taken to enforce liability. When we add to this the fact that later profits have not been applied on these notes and account, in our opinion it appears that there is no showing on the entire proof, of basis for the deduction claimed. Decision will be entered for the respondent. Footnotes
*. Credits of $1,500 under date of June 30, 1934, $1,000 under date of July 31, 1934, and $1,400 under date of May 31, 1935, reducing the note to $5,200, were entered as appears thereon, on March 15, 1946.↩